IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-348-FL

| | |
|---|---|
| ANTOINETTE R. HURTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE TOWN OF HOPE MILLS; MELISSA P. ADAMS in her individual capacity; JOEL C. ACCIARDO, in his individual capacity; BRADLEY DEAN, in his individual capacity, | )  ORDER |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' partial motion to dismiss (DE 11), pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, the motion is granted in part and denied in part as moot.

### STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action against defendants August 31, 2021, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII"), for race, sex, and gender discrimination ("first cause of action") and retaliation ("second cause of action"); and under 42 U.S.C. §§ 1981 and 1983, for denying plaintiff equal protection under the law, due process, and the rights secured by Title VII ("third cause of action"). Plaintiff seeks compensatory and punitive damages, costs, and fees.

Defendants filed the instant motion to dismiss that part of plaintiff's third cause of action based upon a due process violation, or in the alternative to dismiss that claim against individual defendants on the basis of qualified immunity.[1]  Plaintiff responded in opposition and defendants replied.

## STATEMENT OF FACTS

The facts alleged may be summarized as follows.  Plaintiff is a citizen and resident of Cumberland County, North Carolina, and a former employee of the defendant Town of Hope Mills police department.  According to the complaint, plaintiff "is a female, a native American, [and] a person of color."  (Compl. ¶ 19).  Plaintiff was hired in the spring of 2011 to "serve as a police officer."  (Id. ¶ 22).

Plaintiff received positive annual performance evaluations through 2020.  (Id. ¶¶ 23-34). She received performance based pay increases in 2014 and 2016, and she qualified for a "merit increase" in pay in 2019.  (Id. ¶¶ 26, 28, 32).  Plaintiff was promoted "to serve as a detective in July of 2016."  (Id. ¶ 22).

On June 17, 2016, plaintiff "filed a grievance" with the town and police department.  (Id. ¶ 36).  According to the complaint, the basis of the plaintiff's grievance was

> that, after passing a test for the promotion, [p]laintiff waited almost a year to be promoted while simultaneously working cases for the detective division, working twelve hour shifts as a patrol officer, and being denied the proper equipment to perform her job duties safely. [P]laintiff's white/male comparative co-workers/detectives were promoted ahead of [p]laintiff despite the fact that [p]laintiff had more experience working with the detective division, and was the only officer trusted to work cases for the detectives at the time of her application. The Detective Division Sergeant at the time informed [p]laintiff that she nominated the Plaintiff to be promoted ahead of the other white/male applicants but was overturned by [defendants Joel C. Acciardo ('Acciardo'), chief of police, and

---

[1]  Defendants also seek dismissal of Title VII claims against the individual defendants, official capacity claims as duplicative of claims against the Town of Hope Mills, and claims against the Hope Mills Police Department under Rule 12(b)(2). However, the parties filed a stipulation of dismissal as to those claims on November 15, 2021. (DE 14).  Therefore, that part of defendants' motion is denied as moot.

2

Bradley Dean ('Dean'), deputy chief] at the time with no evidence to support the decision. This treatment served as the basis for the grievances.

(Id.). But for plaintiff filing the grievance, plaintiff allegedly "would not have been promoted to detective." (Id.).

On February 19, 2018, plaintiff "filed a second grievance" with the town and police department, "citing unequal treatment and the unconstitutional enforcement of policies and directives leading to favorable treatment to white males versus females and minorities." (Id. ¶ 37). Defendants allegedly "did not take any actions in response" to this grievance. (Id.).

In January 2020, after plaintiff received an "excellent employee evaluation and review," "a white male detective was placed on probation by his direct supervisor (a minority) for refusing and failing to respond to a request for investigation in which a local law enforcement officer's daughter was the potential victim." (Id. ¶ 38). "Based upon the [d]efendants' policies and procedures, the probation of the white male detective made him ineligible for promotion." (Id.). "The white male detective's sudden ineligibility placed" plaintiff "next in line for promotion." (Id.).

Instead, according to the complaint, "[a]s part of [d]efendants' intentional and systematic effort to remove females and minorities from the [police department], [d]efendants engaged in a plan and scheme to discipline [p]laintiff to ensure that, although she was next in line for promotion, she could not be promoted." (Id. ¶ 39). This plan allegedly "included creating a review/write up against [p]laintiff based upon false, inaccurate, and baseless claims." (Id.). Specifically, in May 2020, plaintiff "was counseled and received a write-up," in which defendants allegedly claimed that plaintiff "had not removed inactive cases from her dashboard, which was not her responsibility, and unnecessarily delay[ed] in serving 9 warrants (just 2 months after receiving an excellent performance evaluation) in investigations that had been concluded." (Id.).

3

Allegedly, this was "the first disciplinary action tak[en] against any police officer or detective working for the [town or police department] related to a case load audit." (Id. ¶ 40). "Defendants did not conduct similar audits with respect to white male officers or detectives." (Id.). At the time that "plaintiff was counseled," defendants "knew that, in the weeks prior to the write-up, [p]laintiff had 1) spent two weeks out of the office, while on her own vacation time, attending a North Carolina General Instructor's Course at North Carolina Justice Academy in Salemburg, North Carolina, 2) had missed a considerable amount of time from work on FMLA with an illness and 3) had been temporarily removed from her job duties as a detective to assist with the relocation of property of the [town and police department], while [p]laintiff's white male counterparts were not required to participate in the move." (Id. ¶ 42). "As a result of the counseling/write-up, the [d]efendants did not place [p]laintiff on probation and did not suspend [p]laintiff or terminate [p]laintiff." (Id. ¶ 43).

On May 19, 2020, plaintiff "filed another grievance with the [town] regarding the discriminatory conduct" of defendants Acciardo and Dean. (Id. ¶ 44). "Plaintiff's grievance was also directly related to [p]laintiff's write-up which [p]laintiff, in good faith, asserted was the result of racial and gender/sex discrimination and an attempt to prevent [p]laintiff from being promoted and to ensure a white male would be promoted." (Id.). "A white male . . . was promoted to the position even though he was on probation." (Id.).

On June 8, 2020, the town "conducted a grievance hearing related to" plaintiff's May 19, 2020 grievance. (Id. ¶ 45). Plaintiff describes this hearing and her related contentions as follows:

> The purpose of the hearing was to receive information from [p]laintiff to determine the basis and validity of her position regarding discrimination. [Defendant Melissa P. Adams, town manager] and [d]efendant Acciardo participated in the hearing. [P]laintiff was repeatedly denied the right to have her immediate supervisor present. Instead of addressing [p]laintiff's grievance, and in retaliation for filing grievance, [d]efendants in the presence of the Town of Hope Mills Human Resources Director

4

> retaliated against [p]laintiff and placed her on probation for 6 months. [P]laintiff immediately filed a charge with EEOC following the hearing and placement on probation. [D]efendants did not cite any new basis for the placing [p]laintiff on probation since her counseling and write-up on May 11, 2020. Specifically, there was no new information or event that occurred between [p]laintiff's write-up and placing [p]laintiff on probation to justify [d]efendants' conduct in placing [p]laintiff on probation. During the June 8, 2020 grievance hearing [p]laintiff cited unfair workplace practices, a glass ceiling for minorities, unequal employment procedures, disparate treatment relating to minorities versus not minorities and unequal treatment of females. [P]laintiff also cited the fact that [defendant Acciardo] intentionally disregarded the promotion process set forth in the [town and police department] policies and discriminated against women and minorities.

(Id. ¶¶ 45-46).

Immediately after the hearing, defendants allegedly "commenced an 'internal investigation' to further discredit [p]laintiff." (Id. ¶ 47). "Plaintiff was summoned to the Town of Hope Mills' administrative office on June 16, 2020 and placed on administrative suspension pending the internal investigation into the [p]laintiff's casework and a 'complaint' that the [d]efendants claim they had received." (Id. ¶ 48). "At the June 16, 2020 meeting [p]laintiff was informed that the Child Advocacy Center made the complaint" against her. (Id. ¶ 49). According to plaintiff, "the Child Advocacy Center never made a complaint against [p]laintiff and [d]efendants fabricated the complaint in an effort to fulfill their plan to discredit and ultimately fire" her. (Id.). "In fact, the Child Advocacy Center has previously awarded the Plaintiff the MDT award for the most child forensic interviews in Hope Mills." (Id.). "During the June 16, 2020 meeting [defendant Acciardo] refused to provide [p]laintiff any proof of the 'complaint', a copy of the 'complaint', or any documentation supporting the 'complaint.'" (Id.). "Plaintiff was not provided with any information or documentation to address or respond to the alleged 'complaint' by the Child Advocacy Center." (Id.).

In and around the June 2020 time period, the town human resources director allegedly "informed [p]laintiff that [d]efendant Acciardo was coming to her office on a daily basis to

5

determine whether he had gathered enough 'evidence' to have [p]laintiff terminated." (Id. ¶ 50). At that point, the human resources director allegedly informed plaintiff that the human resources department was aware that plaintiff "was doing her job and that the leadership in the [p]olice [d]epartment was targeting [p]laintiff after 8 years of excellent reviews and that [defendants] were suddenly taking a position that [p]laintiff was not a good employee in effort to support her termination." (Id.). The human resource director allegedly stated to plaintiff that "all minorities are 'crying out' for help related to the discriminatory employment practices" at the town. (Id. ¶ 51).

On June 23, 2020, plaintiff received an e-mail transmittal from defendant Acciardo "with a recommendation for termination . . . based on the 'internal investigation.'" (Id. ¶ 53). "During this internal investigation [p]laintiff was never interviewed, asked for any information, or given any opportunity to counter any claims with evidence or documentation." (Id.). "Defendant Dean performed the bogus investigation at the instructions of the [d]efendant Acciardo and also recommended termination of the Plaintiff's employment." (Id.).

"On September 4, 2020, the Plaintiff was summoned to the [town's] administrative office for a pre-disciplinary hearing just conducted by the [t]own's attorney." (Id. ¶ 54). "On September 11, 2020, [p]laintiff was informed that she was terminated" from the police department." (Id. ¶ 55).

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

6

(2007)).² "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

Defendants argue that plaintiff's due process claim fails as a matter of law because plaintiff fails to allege the deprivation of a property or liberty interest. The court agrees.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV §1. "To adequately allege a . . . procedural due process claim, [a plaintiff] must allege that she (1) lost something that fits into one of the three protected categories: life, liberty, or property, and (2) did not receive the minimum measure of procedural protection warranted under the circumstances." Strickland v. United States, 32 F.4th 311, 347 (4th Cir. 2022). "In assessing a procedural due process claim, unless there has been a deprivation of a protected liberty or property interest by state action, the question of what process is required is irrelevant, for the constitutional right to due process is simply not implicated." Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 146 (4th Cir. 2009); Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (same, for both "substantive or procedural" due process claims).

---

² Internal citations and quotation marks are omitted from all citations unless otherwise specified.

"The Supreme Court has identified 'certain attributes of 'property' interests protected by procedural due process.'" Strickland, 32 F.4th at 348 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. "A 'person's interest in a benefit is a 'property' interest for due process purposes if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.'" Strickland, 32 F.4th at 348 (quoting Perry v. Sindermann, 408 U.S. 593, 601 (1972)).

The United States Court of Appeals for the Fourth Circuit has recognized that "[t]he procedural safeguards encompassed by the due process clause extend to [a plaintiff's] continued employment only if she had a property interest in that employment." Pittman v. Wilson Cnty., 839 F.2d 225, 226 (4th Cir. 1988). "[A] property interest in employment can be created by statute, ordinance, or express or implied contract," and "the sufficiency of the claim of entitlement must be decided by reference to state law." Id. at 227. "Under North Carolina law, subject to a few well-defined exceptions, absent some form of contractual agreement between an employer and employee establishing a definite period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." Id.

"[E]xcept where a contractual right or recognized public policy exception exists, North Carolina requires that a statute or ordinance provide an exception to 'at-will' employment." Id. at

8

229. "[A]bsent evidence that a resolution was enacted with the requisite formality and intent under North Carolina law, it is not sufficiently analogous to a statute or ordinance to create a property interest." Id. Accordingly, in Pittman, the court held that county policies and procedures related to employment, including "internal guidelines to County officials for the administration of the County's employment positions, including the disciplining and discharge of employees" are not sufficient to create a property interest in employment. Id.

By contrast, in Strickland, the court held that a judiciary employment dispute resolution plan ("EDR Plan") created "a right to redress . . . guaranteed by the judiciary," that afforded a plaintiff with "property interests" for purposes of a due process claim. 32 F.4th at 351-352. The court reasoned that the EDR Plan provided "the right to a remedy for injuries from workplace discrimination," akin to a "state-established right to pursue a discrimination claim through adjudicatory procedures" or "statutorily mandated procedures." Id. at 350-351.

With respect to deprivation of a liberty interest in the context of employment, a plaintiff must allege that an employer made false "charges against [her that] placed a stigma on [her] reputation . . . [and] were made public by the employer . . . in conjunction with [her] termination or demotion." Sciolino v. City of Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007). This type of claim requires "some type of dissemination or publication" of the stigmatizing statement, or facts sufficient to "demonstrate a likelihood that any of the defendants disseminated the information" to another employer. Strickland, 32 F.4th at 354.

Plaintiff does not allege in the complaint facts sufficient to give rise to a plausible inference of a deprivation of a property interest. First, with respect to a property interest in continued employment, plaintiff does not allege any "statute, ordinance, or express or implied contract" establishing a "definite period of employment" for plaintiff. Pittman, 839 F.2d at 227. Rather, the

9

allegations in the complaint suggest that plaintiff was an at-will employee, with no property right in continued employment. (See, e.g., Compl. ¶¶ 22-35, 43-55).

Second, regarding a property interest arising from employment policies or procedures, plaintiff does not allege that the town's employment policies or procedures were "enacted with the requisite formality and intent under North Carolina law" to make them "sufficiently analogous to a statute or ordinance to create a property interest." Pittman, 839 F.2d at 229. Nor does she allege circumstances akin to those in Strickland, where an employee dispute resolution plan guaranteed a right to redress injuries, akin to "state-established . . . adjudicatory procedures" or "statutorily mandated procedures." Id. at 350-351. Rather, as in Pittman, the procedures and policies the town allegedly used in hearing plaintiff's grievances, making investigations, and deciding plaintiff's termination, are described in the complaint in a way that they must be considered "administrative in nature" rather than a guarantee of property interests. Pittman, 839 F.2d at 229. (See, e.g., Compl. ¶¶ 39, 45-46, 48, 53-54).

Third, concerning a liberty interest, plaintiff does not allege false charges made against her that were brought "public by the employer . . . in conjunction with [her] termination." Sciolino, 480 F.3d at 646. While plaintiff suggests that complaint by the Child Advocacy Center was fabricated, (see compl. ¶ 49), she does not allege "some type of dissemination or publication" of the stigmatizing statement, or facts sufficient to "demonstrate a likelihood that any of the defendants disseminated the information" to another employer. Strickland, 32 F.4th at 354. In sum, plaintiff fails to allege the deprivation of either a property interest or a liberty interest necessary to state a due process claim under the Fourteenth Amendment.

Plaintiff nonetheless argues that she has a "property right to continue her employment without experiencing racial or gender discrimination or retaliation." (Pl's Mem. (DE 17) at 13).

She cites to N.C. Gen. Stat. § 95-151, which prohibits employment discrimination, and N.C. Gen. Stat. § 95-241(a), which prohibits retaliation in employment. Plaintiff also relies upon Bigelow v. Town of Chapel Hill, 227 N.C. App. 1, 10 (2013), which holds that "[a]n employer wrongfully discharges an at-will employee if the termination is done for an unlawful reason or purpose that contravenes public policy." While these statutes and case may support a cause of action under state law, they do not comprise a "state-established right to pursue a discrimination claim through adjudicatory procedures" or "statutorily mandated procedures" as recognized in Strickland. 32 F.4th at 350-351. Thus, they do not establish property rights, in themselves, for plaintiff apart from the terms and conditions of her employment.

Plaintiff also suggests that she has a property or liberty interest in her employment because the North Carolina Constitution "guarantees the citizens of the State the enjoyment of the fruits of their labor in the context of employment." (Pl's Mem. at 14). Plaintiff cites to Tully v. City of Wilmington, 370 N.C. 527, 534 (2018), in which the North Carolina Supreme Court recognized "a claim that [a plaintiff's] employer unconstitutionally burdened his right to the enjoyment of the fruits of his labor" under Article I, Section 1 of the North Carolina Constitution. Id. at 534. Plaintiff also relies upon Mole' v. City of Durham, 279 N.C. App. 583 (2021), where that court held Article I, Section 1, of the North Carolina Constitution provides a cause of action for an employee of a city that does not "follow[] its own disciplinary procedures . . . in discharging" an employee. Id. at 592.

Plaintiff's suggestion misses the mark for several reasons. As an initial matter, none of the authorities cited describe a property interest. Indeed, the courts in Tully and Mole' held that the plaintiffs in those cases had not stated a due process claim based upon a deprivation of a property interest, even though they had claims under Article I, Section 1 of the North Carolina Constitution.

11

Id. at 592-595; 370 N.C. at 538. Tully likewise held that a "plaintiff's at-will employment status meant that she had no cognizable property interest in continued employment." 370 N.C. at 534.

With respect to a liberty interest, the court in Tully first recognized that "[o]ne of the liberty interests encompassed in the Due Process Clause of the Fourteenth Amendment is the right to engage in any of the common occupations of life, unfettered by unreasonable restrictions imposed by actions of the state or its agencies." 370 N.C. at 527. "The right of a citizen to live and work where he will is offended when a state agency <u>unfairly imposes some stigma</u> or disability that will itself foreclose the freedom to take advantage of employment opportunities." Id. (emphasis added). As such, Tully recognized the contours of the deprivation of a liberty interest due to imposition of a stigma, as the court has already described above. See Strickland, 32 F.4th at 354; Sciolino, 480 F.3d at 646. For the reasons stated above, plaintiff fails to state a claim for a deprivation of a liberty interest.

Third, the remainder of the analysis in Tully, and the holding in both Tully and Mole', concern whether a plaintiff has stated a claim for the "deprivation of his right to the enjoyment of the fruits of his labor under Article I, Section 1 of the North Carolina Constitution." Tully, 370 N.C. at 539; see Mole' 279 N.C. App. at 588-592. Importantly, "[u]nlike the due process and equal protection provisions . . . in the federal constitution, this guarantee <u>has no analogous federal constitutional clause</u>." Mole' 279 N.C. App. at 586 (emphasis added). As such, Tully and Mole' provide a framework and requirements for stating a claim under state law, specifically Article I, Section 1, of the North Carolina Constitution, and not a claim under federal law, which plaintiff asserts in her complaint. Specifically,

> to state a direct constitutional claim grounded in this unique right under the North Carolina Constitution, a public employee must show that no other state law remedy is available and plead facts establishing three elements: (1) a clear, established rule or policy existed regarding the employment promotional process that furthered a

> legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation. If a public employee alleges these elements, he has adequately stated a claim that his employer unconstitutionally burdened his right to the enjoyment of the fruits of his labor.

370 N.C. at 536–37.

Whether or not plaintiff has stated a claim under Article I, Section 1, of the North Carolina Constitution is not before the court, because plaintiff has not asserted such a claim. Nor has plaintiff alleged facts giving rise to an inference that the elements of such a claim have been satisfied, including a critical element that "no other state law remedy is available." Id. at 536. In any event, it suffices for purposes of the instant analysis that Article I, Section 1 of the North Carolina Constitution does not expand property or liberty interests as a basis for a federal due process claim, but rather provides a "unique right" grounding a claim under North Carolina law. Id. at 536; see Mole' 279 N.C. app. 592-596.

In sum, plaintiff's due process claim fails as a matter of law and must be dismissed. Because dismissal is warranted on this basis, the court does not reach defendants' alternative argument based upon qualified immunity.

**CONCLUSION**

Based on the foregoing, defendant's motion (DE 11) is GRANTED IN PART and DENIED IN PART AS MOOT, as set forth herein. That part of plaintiff's third cause of action based upon a due process violation is DISMISSED for failure to state a claim upon which relief can be granted. The following claims not subject of the instant motion remain for adjudication in accordance with the case schedule set by the court's November 22, 2021, case management order (DE 16):

1. Title VII claim for race and sex/gender discrimination against defendant Town of Hope Mills (first cause of action).

2. Title VII claim for retaliation against defendant Town of Hope Mills (second cause of action).

3. That part of plaintiff's third cause of action, under 42 U.S.C. §§ 1981 and 1983, against defendants for denying plaintiff equal protection under the law, as well as the rights secured by Title VII.

SO ORDERED, this the 6th day of June, 2022.

                                                              LOUISE W. FLANAGAN  
                                                              United States District Judge

14

Case 5:21-cv-00348-FL    Document 22    Filed 06/06/22    Page 14 of 14